IN THE UNITED STATES DISTRICT COURT

OF WESTERN PENNSYLVANIA


BRIAN FARNETH, on behalf of    CIVIL DIVISION
himself and all others
similarly situated,       No. 13-1062

         Plaintiffs,

     vs.

WALMART STORES, INC., trading
and doing business as
WALMART,

        Defendant.
       _____

Transcript of CASE MANAGEMENT CONFERENCE
held on AUGUST 5, 2013
United States District Court, Pittsburgh, Pennsylvania
BEFORE:  HONORABLE MARK R. HORNAK, DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:        Frank G. Salpietro, Esq.
                  Lori Miller, Esq.
                  Rothman Gordon, P.C.
                  310 Grant Street
                  Pittsburgh, PA 15219

For the Defendant:        Thomas L. Allen, Esq.
                  James L. Rockney, Esq.
                  Zachary Gelacek, Esq.
                  Reed smith
                  225 Fifth Avenue
                  Suite 1200
                  Pittsburgh, PA 15222

Court Reporter:           Karen M. Earley, RDR-CRR
                  6260 U.S. Courthouse
                  700 Grant Street
                  Pittsburgh, PA 15219
                  412-201-2660

Proceedings reported by mechanical stenography.
Transcript produced by computer-aided transcription.

```
 1              P R O C E E D I N G S
 2   (August 5, 2013.  In open court.)
 3              THE COURT:  This is a preliminary status conference
 4   or preliminary case management conference in Civil Action
 5   No. 13-1062, which is Brian Farneth, on behalf of himself and
 6   others similarly situated, against Walmart Stores, Inc.,
 7   trading and doing business as Walmart.
 8              Will counsel for the plaintiffs, please enter their
 9   appearance.
10              MR. SALPIETRO:  For the plaintiffs, Frank Salpietro
11   and Lori Miller from the law firm of Rothman Gordon.
12              THE COURT:  Good to see you.  Ms. Miller, at some
13   point you will have to file a paper if you could also formally
14   entering your appearance on the docket.
15              MS. MILLER:  I apologize, Your Honor.  I will do
16   that.
17              THE COURT:  For the defendant.
18              MR. ALLEN:  Your Honor, Tom Allen from Reed Smith
19   for the defendant Walmart Stores, Inc.
20              MR. ROCKNEY:  Your Honor, Jim Rockney for the
21   defendant Walmart Stores, Inc., also from Reed Smith.
22              MR. GELACEK:  Your Honor, Zachary Gelacek, also
23   from Reed Smith for defendant Walmart.
24              THE COURT:  Good to see you, Mr. Gelacek,
25   Mr. Rockney, and Mr. Allen.  Thanks for coming in.
```

1        I know this is a little bit out of the ordinary,

2   but when I saw the notice of removal and reviewed the

3   complaint and the documents that were attached to it, it

4   seemed to me before we all got ourselves excited and off to

5   the races, it would probably be a good idea if we had a

6   preliminary status conference to see what people were thinking

7   about the shape of the case and to the extent appropriate,

8   modify how we handle Rule 26(f).

9        I'm not saying it's necessary or appropriate, but I

10  thought it would be a good idea to talk about that a little

11  bit and get some sense, and I consciously held it around the

12  time and now we will be before when a Rule 12 response would

13  be due otherwise from the defendant.

14       We do have the possibility of class certification

15  here but more importantly, when you read the complaint, it

16  struck me that it is highly possible that there isn't much

17  gray area here.

18       Either what Walmart did in the case of

19  Mr. Farneth's shaving cream purchase was perfectly permissible

20  or it isn't, and the question then is how often does this

21  happen or not happen and maybe what happened with

22  Mr. Farneth -- but I have no reason to doubt on the pleadings

23  he didn't really buy the shaving gel, and before we let a lot

24  of line and reel off the spool here, since it probably is

25  perfectly okay and perfectly not okay, possibly we ought to

```
1    talk a little bit about that.
2           Mr. Allen, certainly within his client's rights,
3    has filed a motion to stay the action, and this Court relying
4    on the Doctrine of Primary Jurisdiction and the reasoning, if
5    not the opinion, from Chief Judge McLaughlin in Johnson versus
6    Famous Dave's of America and cases that came before it to
7    suggest the case be stayed, so then the Court was also curious
8    about what happens with the money.
9           Does Walmart turn it all over to the Commonwealth
10   other than the one percent collection fee that is authorized
11   by statute for vendors that collect sales tax?
12          If Walmart is over collecting -- I'm not saying
13   they are or aren't -- is whatever money they get in at the
14   point of sale turned over to the Commonwealth of Pennsylvania?
15          Maybe to start with, Mr. Allen or Mr. Rockney or
16   Mr. Gelacek, you could tell us what happens here?  What is up?
17          MR. ALLEN:  Sure, Your Honor.
18          THE COURT:  Counsel can speak from wherever they
19   want and whatever position they want.  Make yourself
20   comfortable.
21          MR. ALLEN:  To address the last question first, the
22   money is paid to the Commonwealth.  Walmart acts, pursuant to
23   the statute, which requires that the vendor collect the sales
24   tax and then transmits that to the Department of Revenue,
25   which is what Walmart does, less the one percent commission.
```

1          So, that's the answer to that question.

2          Your Honor, as you might expect when you were

3   saying is what Walmart is doing okay or not okay, our position

4   is it's definitely okay --

5          THE COURT:  Or at least you have been told it's

6   okay and if it's not okay, no one has shared that with you.

7          MR. ALLEN:  -- by the Department of Revenue.

8   Walmart is doing it at the direction of the Department of

9   Revenue, who in some of the correspondence we attached to the

10  brief we filed last week, directed Walmart to not take the

11  coupons into account given the sort of system that Walmart

12  uses.

13          In our view, Your Honor, the reason we went ahead

14  to file the motion to stay -- even in advance of this

15  conference, I gave Mr. Salpietro a heads-up last week we were

16  doing that -- we do think this is an exceptionally clear case

17  for the application of the Doctrine of Primary Jurisdiction.

18          Here is a situation where the plaintiff's case is

19  based largely on the guidelines that were issued by the

20  Department of Revenue.  The Department of Revenue has directed

21  Walmart to treat the coupons in a certain manner.

22          So, it does seem like the kind of case where the

23  Department of Revenue should have the opportunity to hear it.

24  There's a procedure for the taxpayer to use to petition for a

25  refund and I think that's the reason the cases we cited, both

1    the Superior Court case and the case from the Eastern District

2    held in a situation like this where the plaintiff is trying to

3    recover sales tax, sales tax refunds, that the Court should

4    invoke the primary jurisdiction doctrine, stay the case and

5    allow the plaintiff to go to the Department of Revenue with

6    their claim.

7              THE COURT:  Before I ask you the next question,

8    Mr. Allen, I want to assure Mr. Salpietro and Ms. Miller not

9    only will you be able to tell me today about the motion to

10   stay, we'll give you some time to file something in writing.

11             Mr. Allen, so we all know how the world might

12   unfold, if, after full consideration of everyone's position,

13   the Court concluded the right thing to do is to stay the

14   action, to allow that under this Doctrine of Primary

15   Jurisdiction, what would then happen?  If I stay it on

16   Tuesday, what happens on Wednesday?

17             MR. ALLEN:  Well, there is a statutory procedure

18   for the plaintiff to pursue a refund with the Department of

19   Revenue.  It's my understanding that is initially heard by the

20   Board of Appeals within the Department of Revenue.  They have

21   I believe it's six months to make a decision.  It's my

22   understanding they can get a further extension of six months

23   to make a decision.  In any event, there is a time limit.

24             This is what the Board of Appeals does is hear

25   taxpayers' challenges to taxes.

1          THE COURT:  Do they hear them as onesies?  Moments

2    from now Mr. Salpietro may tell me there is a modest level of

3    incentive for any one shaving cream, bubble wrap, frozen

4    chicken patty purchaser -- I guess those are tax exempt

5    because they are food -- for any one shopper, unless they

6    happen to buy a Jeep from Walmart, there is a very modest

7    incentive to go through that process to collect seven percent

8    on one can of even high-quality shaving gel.

9          Are these things heard as onesies in Harrisburg or

10   could they hear them collectively or in re:  Walmart sales

11   tax?

12         MR. ALLEN:  I don't know the answer to that

13   question.  I think the point of the cases on primary

14   jurisdiction is that since it is the department's policy and

15   as we mentioned earlier, the revenue goes to the state, goes

16   to the Commonwealth.

17         This is really a case where the Commonwealth has

18   the most at stake financially, that the idea is they need to

19   hear it, apply their expertise, their experience, and make the

20   decision.  If the case is to go forward here, it will go

21   forward based on their ruling.

22         THE COURT:  Let me ask you this, Mr. Allen.  I'm

23   going to make the facts egregious.  That doesn't mean I'm

24   likening it to your client's.  I'm making them egregious so I

25   can understand your position.

1           Let's assume Walmart decided to collect sales tax

2    and remit it on food, which is plainly it's not prepared food.

3    Those Walmart steaks that are on the TV commercial, they

4    decide we're going to charge seven percent -- we are going to

5    collect seven percent sales tax on them.  They do.  There is

6    no question that food is exempt from sales tax in

7    Pennsylvania.  Walmart does it anyway or some other company,

8    ABC Company.

9           Over the course of the year, they remit half of a

10   million dollars from 50,000 transactions, they remit half a

11   million dollars in sales tax collected on something plainly

12   that should not have been collected on.

13          In that situation, would each of the steak

14   purchasers have to trigger the process that you've identified

15   or do they have a claim against Walmart saying we know you

16   didn't keep the money other than the one percent

17   administrative charge but it's plain as day you shouldn't have

18   collected it.

19          Why do we have to one at a time each, 50,000 of us,

20   trench off to Harrisburg?  What do you think about all that?

21          MR. ALLEN:  That's pretty similar to the situation

22   in that case from the Eastern District, the Famous Dave's,

23   Johnson versus Famous Dave's case where essentially both sides

24   admitted that Famous Dave's was a bar or restaurant in

25   Philadelphia that had erroneously collected sales tax and

1   notwithstanding that, the Court still held that the taxpayer

2   needed to go, in the first instance, to the Department of

3   Revenue with their claim.

4           So those aren't the facts here, as you know, but I

5   think even in a situation like that based on the Eastern

6   District's decision, at least that was argued by the

7   plaintiff's counsel in that case, that the Court, the Eastern

8   District said the Primary Jurisdiction Doctrine still applies

9   and the taxpayer has to go to the Department of Revenue.

10          THE COURT:  You did not argue in your papers some

11  of the many flavors of the Abstention Doctrine where there is

12  an intricate question of state law or ongoing state proceeding

13  or pervasive regulatory scheme.  It's not.

14          There's a process under state law and the federal

15  courts are duty bound, I take it, in your estimation, to apply

16  that the same as if I were the Court of Common Pleas at the

17  other end of Grant Street, whether it crosses state, federal

18  membrane, it still exists.

19          MR. ALLEN:  We are arguing this is a matter of

20  Pennsylvania subsume law and not based on abstention.

21          THE COURT:  I didn't see Burford or Sun Oil or

22  Colorado River Authority or any of the Pullman cases, any of

23  the other ones.

24          Okay.  Mr. Salpietro, knowing we are going to give

25  you whatever reasonable time you want to file anything in

1    writing, does it affect your estimation of the case if

2    Walmart, in collecting this money, forked it all over to the

3    Commonwealth of Pennsylvania?

4            Let's assume that to be true, and I have no reason

5    to doubt Mr. Allen's representation, do you need to name --

6    primary jurisdiction aside, do you need to name as a part the

7    people that have the money because my understanding is in

8    Pennsylvania, the vendor acts as the agent, not for the

9    taxpayer but for the Department of Revenue, I think, on sales

10   tax, maybe not on use tax.

11           If I were to hold that primary jurisdiction doesn't

12   slow the wheels down here, do you need to add as a party the

13   people that have the money?

14           MR. SALPIETRO:  Your Honor, I think that's one of

15   the issues that you'll be reading about when we do file a

16   response to the motion to stay.  In fact, it may very well be

17   a motion -- a response to a motion and maybe an alternate

18   motion for a remand because I do believe that at least under

19   Mr. Allen's view of the world, wherein he is suggesting or

20   Walmart is suggesting that not only do you have to go and get

21   review from the Commonwealth of Pennsylvania, but you also

22   have to get your refund and basically get all your relief from

23   the Commonwealth of Pennsylvania, that leaves nothing for

24   Walmart to have to pay over.

25           Consequently, under that circumstance, it would be

1    our position that under the Class Action Fairness Act, the

2    basis upon which they remove the case doesn't apply because

3    the real primary defendant, by their own admission, is the

4    State of Pennsylvania.

5              THE COURT:  They are not at risk for five million

6    dollars.  Is that the CAFA number, you have to have at least

7    five million on the table?

8              MR. ALLEN:  Yes.

9              THE COURT:  You are saying they are not at risk for

10   five million bucks, so there is no basis to move?

11             MR. SALPIETRO:  They may be at risk but when you

12   bring them up here under the exception, which I think is

13   (d)(5)(A), the removal does not apply or isn't permitted when

14   the primary defendant is going to be the state because there's

15   a question as to whether this Court, with due respect, can

16   order the state to do anything.

17             THE COURT:  Would the Eleventh Amendment bar this

18   case or the Anti-Tax Injunction Act bar this case?  Is this

19   aimed at seeking to impair the collection of a tax?  I don't

20   know the answer to my question.

21             MR. SALPIETRO:  I don't know the answer.

22             THE COURT:  Would the Eleventh Amendment bar the

23   state being a party here?

24             MR. SALPIETRO:  I don't know, Your Honor.

25             THE COURT:  I don't know either.  Mr. Allen, any

1    thoughts on that?

2              MR. ALLEN:  It is something we are looking at but

3    I'm not prepared to state definitively our view on it.

4              THE COURT:  This isn't jeopardy.  There is no

5    requirement to buzz in quickly.

6              MR. SALPIETRO:  The way that it is being cast by

7    Walmart in terms of their motion for stay is really as an all

8    or nothing proposition.  Despite calling it a motion for stay,

9    essentially they are saying everything, including the money,

10   has to come from the Commonwealth and not from Walmart.  You

11   should let us go there first.

12             The problem is that's not true respectively.  We

13   know, for example, there is a revenue ruling that has been

14   made public, and I don't have it off the top of my head, it

15   will be in our papers, certainly, that indicates that many,

16   Walmart or people in the position of Walmart, would be able to

17   pay the money to the end user, i.e., the consumer and then in

18   turn, turn around and get a credit from the Department of

19   Revenue.

20             It's not that a refund has to come from the

21   Department.  It's possible -- and by their own admission, the

22   experts have said that Walmart can pay the money back and then

23   take a credit on their tax returns.

24             So --

25             THE COURT:  You are saying there is more than one

1    avenue to the taxpayer.

2             MR. SALPIETRO:  Yes.  Walmart's position thus far

3    has been you have to have stay under Neiman Marcus or Dave's,

4    the only avenue is for the taxpayer to go and ask for the

5    refund directly.  We don't think that is it.

6             THE COURT:  From then Secretary Fajt or younger

7    looking then Secretary Fajt in this petition for stay, he

8    talks about this, and the Revenue Department says on those buy

9    one, get one, that you deduct the coupon amount from the

10   taxable portion of the purchase price, if the receipt

11   describes both the item purchased and the coupon that applies

12   to it.

13            This ensures that a coupon relating to a

14   non-taxable item will not reduce the taxable purchase price

15   and protects the retailer by showing why the taxable price was

16   reduced.

17            It says, The Department interprets the requirement

18   of a description to mean that the cash register receipt makes

19   a clear reference to the item and the coupon related to it or

20   a clear reference that there is an amount deducted on any

21   purchase or a percentage discount on all items listed, whether

22   taxable or not.

23            Then the receipt, which is attached to both the

24   complaint and the motion to stay, shows two cans of shaving

25   gel.  We know that because it uses the phrase shaving gel,

1   $2.97 each.  Then it says coupon, 47, 400, 2.97 with a minus

2   sign and a zero after it.

3          I guess the question is does this meet the

4   requirements of Secretary Fajt's directives, then Secretary

5   Fajt's directives, and, that is, with the receipt in this

6   form, is it your position as the plaintiffs that Walmart had

7   the discretion to -- that this was good enough?  This coupon

8   clearly relates to the shaving gel and, therefore, there

9   should not have been tax on the second $2.97?

10          MR. SALPIETRO:  A couple ways to respond to that.

11  The answer is yes.

12          I should take a few steps back and note that

13  Secretary Fajt's newsletter, which is very similar to what we

14  cited in our complaint, is from 2005 and, of course, the

15  technology has come leaps and bounds beyond what we had in

16  2005, which, by the way, is when they received their letter

17  ruling from the Commonwealth of Pennsylvania or at least from

18  the General Counsel, Department of Revenue.

19          In fact, the way the coupons are not only coded,

20  which is different than in 2005, but the way the POS systems

21  have responded universally to those codings makes it very

22  clear that what happened in this particular case clearly meets

23  the requirements of the Pennsylvania regulation.

24          The identification in this case of the shaving gel

25  and the identification of the coupon relating to the shaving

1   gel --

2            THE COURT:  Although there was nothing else

3   purchased other than shaving gel.

4            MR. SALPIETRO:  In this case, that's right.

5            THE COURT:  Let me ask you this, Mr. Salpietro.

6   Did your client go to Walmart for the sole purpose of buying

7   shaving gel or was there also a purpose of buying shaving gel

8   and then becoming a plaintiff in the lawsuit or did he just

9   happen to need some shaving gel?

10            MR. SALPIETRO:  I don't know.  He went to buy

11   shaving gel and he went to buy that and he took money out in

12   addition but --

13            THE COURT:  He got $40 back.

14            MR. SALPIETRO:  I don't know what the motivation

15   was.

16            THE COURT:  Okay.  Mr. Allen, does Walmart in

17   2000 -- on June 8, 2013, does it use the same point of sale

18   technology that was used in 2005 when it got the letter from

19   the GC?

20            MR. ALLEN:  My understanding, Your Honor, is that

21   the technology is the same as was described in the letter

22   dated August 11, 2005, that we submitted with our brief.

23            THE COURT:  Let me ask you this.

24            Presumably Walmart or any retailer -- I'm not

25   saying this directly as to Walmart -- but any retailer could

1    have on their receipt as much detail as they wanted.  If

2    Walmart wanted to have coupon shaving gel, presumably, it

3    could do that.

4           Do you believe this receipt complies with -- strike

5    that.  Let me repeat that and get it correct here.

6           The receipt as it's printed, does it meet the

7    explanation from Secretary Fajt and from the General Counsel

8    as to detail as to what the coupon applies to and if it

9    doesn't, is that a matter of choice by Walmart?

10          MR. ALLEN:  Well, first of all, I think the answer

11   is that it doesn't meet the Department of Revenue requirements

12   because in the letter from Office of Chief Counsel of the

13   Revenue Department, the system is described and it's

14   described, Your Honor, by the codes by the coupon.  There are,

15   as I understand it, manufacturer's codes.

16          So, it is possible, as I understand it, as is

17   explained in the letter from Walmart, that the

18   manufacturer -- you can show where a coupon -- there is a

19   coupon for a manufacturer and an item purchased from that same

20   manufacturer and that's what led to the Walmart inquiry in

21   2005.  Is this enough for us to take coupons into account?

22          The Department of Revenue says in their letter, no,

23   it's not, and they explain the issue of when there's multiple

24   items and some are taxable and some are non-taxable.  It goes

25   on at the bottom of Page 3, the chief counsel says, As the

1  proposed POS, point of sale, system does not allow a specific

2  coupon to be tied to a specific item in all situations,

3  Walmart may not deduct the value of manufacturers' coupons

4  from the purchase price of items prior to calculating the

5  sales tax.

6          That's the direction that Walmart has been

7  following is that because the system did not allow the coupons

8  to be matched with the items in all situations --

9          THE COURT:  Whether it was, in fact, matched in a

10 specific situation because the only thing purchased was

11 shaving gel.

12         MR. ALLEN:  Right, in this particular situation,

13 where there is only one item.

14         Now, the plaintiff's case here is much broader than

15 that, at least as I read it in the complaint.  It's

16 challenging the "all situations" even where multiple products

17 were purchased.

18         THE COURT:  So, somebody had a BOGO coupon when

19 they were doing their monthly, weekly, biweekly shopping and

20 had two carts full of stuff, including groceries and clothing,

21 which are not taxable, and they also bought shaving gel and

22 had the BOGO coupon, you would see these three entries on that

23 receipt along with perhaps 50 other ones and because the minus

24 $2.97 portion of the receipt would not be expressly tied to a

25 taxable product, therefore, Walmart could not reduce the

1   purchase price, whether it wanted to or not, by that amount.

2          MR. ALLEN:  That's the position of the Revenue

3   Department.

4          THE COURT:  Does Walmart have any incentive,

5   Mr. Salpietro, to collect too much tax?

6          MR. SALPIETRO:  To collect too much tax?

7          THE COURT:  Would they have any incentive, putting

8   their most nefarious hat on, do they have any incentive to

9   collect tax in circumstances where it is not collected?

10          MR. SALPIETRO:  Yes.  One is the one percent

11   commission.

12          Two, I would suspect in order to change the system

13   for Pennsylvania, specifically, that there is going to have to

14   be some sort of modification to their existing POS system,

15   which they hope to use nationwide, but I think it's required.

16          So, at least in those two instances, there is an

17   incentive to collect too much tax by sort of sweeping under

18   the rug the idea they have to go through these steps in order

19   to reduce the amount.

20          THE COURT:  Mr. Allen, is the one percent one

21   percent of the sales tax or is it one percent of the purchase

22   price?  That is, does one percent mean Walmart in Allegheny

23   County collects seven percent but pays six percent over to

24   Pennsylvania or does it collect seven percent and pays 99

25   percent of seven percent over to Pennsylvania?

1        MR. ALLEN:  The one percent is a percentage of the

2    tax, amount of the tax that's collected.

3        THE COURT:  So if Walmart was viewing as a profit

4    center the overtaxation of consumers, it would be in order to

5    get one percent of the sales tax collected on the free item in

6    a BOGO?

7        MR. ALLEN:  Yes.

8        THE COURT:  Is your case only about BOGO?

9        MR. SALPIETRO:  No.  All manufacturing coupons are

10   included in the concept.

11       THE COURT:  Okay.  So it's for one percent of the

12   sales tax.  If Walmart collected -- I'm just picking a number

13   here -- for them to make an extra million bucks, they would

14   have to over collect $100 million in tax coupons, is that what

15   you're saying, Mr. Allen?

16       MR. ALLEN:  I believe that's right, if the math is

17   correct.

18       THE COURT:  I pick things with a hundred.

19       MR. ALLEN:  Right.

20       THE COURT:  So you think that is what they are up

21   to, Mr. Salpietro?

22       MR. SALPIETRO:  I think that's part of what they

23   are up to but I think whether deliberate or otherwise, they

24   shouldn't be collecting the tax and they are.

25           Now, they're saying it's because of this 2005

1    letter, which, as the Court may very well know, is now stale

2    because those type of rulings in that letter are only good for

3    five years.

4            THE COURT:  Do you have any reason to believe the

5    current Secretary of Revenue -- I apologize for not knowing

6    who that is -- do you have any reason to believe the Chief

7    Counsel's Office, Secretary of Revenue presented with the same

8    facts would issue a different ruling today?

9            MR. SALPIETRO:  I do believe that because of

10   certain things.  First of all, of course what Walmart is told

11   by the Department of Revenue based on their 2005 letter is

12   always a function of what information they provide to the

13   Department of Revenue in the first instance.

14           What we will see as we get into the response to the

15   motion to stay is they did not provide a full explanation of

16   what the coupons really mean.

17           There is a portion of coupon both in 2005 and

18   today, more explicit today that is called a family code or

19   product code that specifically identifies the exact items that

20   are tied to the cash register.

21           So, for example, if I go into the Walmart, as the

22   Court suggested, and I buy 50 items, one thing I don't buy is

23   shaving gel, and I give them the coupon and as they scan

24   through, it will not stop.  If I have to buy three to get a

25   discount and I buy two, the same thing.

1          The coupon is coded in such a way it is tied to a

2    specific item and it is tied to a specific number based on the

3    code.

4          That was in 2005 as well and carries on into the

5    future.

6          So, no where in at least what we have seen thus far

7    has Walmart provided that level of explanation to the

8    Department of Revenue in order to get the ruling that they got

9    in 2005, but beyond that, and aside from the fact it became

10   stale in 2010 because it's only good for five years, you will

11   soon see, I hope, that the protocol for coupons has changed to

12   universally where all retailers are on board, including

13   Walmart, such that in 2008 and 2011, the whole way in which

14   coupons are coded has changed.

15         It is -- they are coded in such a way, including

16   the product and family code I talked about, that would make it

17   virtually impossible not to have a situation where the receipt

18   matches up with the coupon.

19         THE COURT:  Well, it would appear to -- as the

20   father of five, I won't say I'm a professional shopper but I

21   perhaps had more experience than some others have had.  Even I

22   can tell it sure looked like the coupon related to the shaving

23   gel, especially since the only thing purchased was shaving

24   gel, but even if -- because the focus at Procter & Gamble or

25   L'Oreal or whoever wants to make sure they're not redeeming

1    coupons because that's ultimately who redeems them, they are

2    not redeeming coupons in a situation where the consumer

3    doesn't use the coupon the way it was designed to use or a

4    vendor was seeking recovery for something they are not

5    entitled to recover for, that's all sort of behind the

6    curtain.

7                   If it doesn't show up on the receipt that the

8    coupon was for the sunscreen or the coupon toothpaste is

9    exempt, the coupon wasn't for the paper towel, which I think

10   are not exempt, if that doesn't show up on the receipt for

11   state tax purposes, does all of that modern behind-the-scene

12   stuff even matter?

13                  Isn't your gripe or real question is can Walmart or

14   anyone in Walmart's shoes decide not to upgrade their point of

15   sale system to show all that it can show on its receipt?

16                  If the state says no, the receipt has to clearly

17   show the product that the coupon relates to, is it good

18   enough, Mr. Allen, if Walmart says our system doesn't do that

19   or do you have to answer the next question and we decided not

20   to upgrade our system to do that even though that's

21   technically possible?

22                  MR. ALLEN:  Your Honor, the claim in this case, as

23   I understand it, is that there was sales tax that was

24   collected that was not owed.

25                  So, I don't think the issue of whether the sales

1   tax was properly collected in any way turns on does Walmart

2   have a legal obligation to have a computer system that leads

3   to the minimum tax.

4           THE COURT:  That's a better way of putting my

5   question.

6           MR. ALLEN:  I didn't understand that was the

7   plaintiff's claim and I don't know the answer to that

8   question.

9           My gut reaction is no, that it's a matter of what's

10  the system that Walmart has and then the issue is does it

11  generate the receipt in the manner that the Department of

12  Revenue requires.

13          THE COURT:  If it turns out as a substantive

14  matter, and I'm not saying this is, but if it turns out this

15  way, Mr. Farneth did not owe sales tax on the second can of

16  shaving gel as a substantive law matter and Walmart, in fact,

17  collected it but that Walmart's receipt is not in a form that

18  relieves it of the duty to collect it, what happens then?

19  What are the rights and duties of the parties then?

20          If Mr. Farneth didn't know the tax, Walmart

21  collected it, gave it to the state, and the form of receipt

22  would not permit Walmart to not collect it, is that all okay?

23          MR. ALLEN:  If I understand the question, and I

24  apologize if I don't, the Department of Revenue has directed

25  when the sales tax is to be collected and has also directed

1   what kind of receipt needs to be generated to justify taking

2   the coupons into account.

3           That seems to me is the key obligation whether

4   Walmart is entitled to collect the tax or not.  If the receipt

5   does not meet the requirements of the Department of Revenue,

6   then Walmart is obligated to collect the tax and pay it to the

7   Commonwealth.

8           THE COURT:  I guess my question is if Mr. Farneth

9   substantively is not obligated to pay it because Walmart isn't

10  paying the tax, it's collecting it from Mr. Farneth, if

11  Mr. Farneth has no underlying duty to pay the tax because it's

12  a BOGO and it doesn't require an after sale activity like pay

13  your bill faster and those sorts of things, he has the right

14  coupon to get the BOGO, he has no obligation to pay the tax.

15          If you didn't collect it, he would not be required

16  to pay use tax on Can 2 of the shaving gel, but Walmart says

17  we are obligated to collect it, Mr. Farneth, and the reason is

18  or part of the reason is our receipt doesn't directly tie the

19  coupon to the product.

20          Doesn't Mr. Farneth have a gripe, maybe not one the

21  law could do anything about, but a gripe to say, wait a

22  second, I will concede you are obligated to collect the tax,

23  but the reason you are obligated to collect it isn't because I

24  actually owe it, it's because your receipt isn't in the right

25  form and that's not something the Mr. Farneths of the world

1    can do anything about?

2           If that turns out to be the situation, I'm not

3    implying any bad motives but that just is the way it is, is

4    that -- does that create any legally cognizable relief?

5           MR. ALLEN:  I think, first of all, if he has a

6    gripe, it's with the Revenue Department.

7           What I think the Revenue Department would say, as I

8    understand it, based on the statute and regulations and this

9    guidance, their position is they're entitled to six or seven

10   percent of the purchase price, that the purchase price -- in

11   calculating the purchase price, coupons can be taken into

12   account but only if the receipt allows those specific items to

13   be matched to a specific coupon.

14          I think the Revenue Department's position would be

15   if the receipt doesn't meet that requirement, then Mr. Farneth

16   does owe the tax.

17          THE COURT:  Does it, therefore, mean that

18   unilaterally any vendor of goods could decide -- and this is

19   the second prong when I asked Mr. Salpietro how could Walmart,

20   why would Walmart, if it is choosing to collect too much tax,

21   what's in it for them -- could any vendor, whether it's

22   Harry's corner store or Walmart, say, you know what, we

23   control what's on the receipts, we're just not going to make

24   the receipts compliant.  We have all sorts of business

25   reasons, it's a pain, an aggravation, we would have to pay

1  someone $600 to upgrade the software, we aren't going to do

2  that and it's no skin off our hide because we just collect

3  more money, it's easier?

4        Can a vendor elect, in essence, decide, to collect

5  too much tax and say I'm obligated to collect too much tax and

6  the reason is the form of the receipt, which I'm in control

7  of, doesn't excuse me from the obligation to collect.

8        MR. ALLEN:  I don't know the answer to that

9  question and as I understand it, that's not the plaintiff's

10  case but I will -- the letter we submitted from March 2005

11  was, on its face, is Walmart saying we think our system is

12  sufficient for us to take the coupons into account.

13        THE COURT:  And we want to have everyday prices so

14  we want to charge less.

15        MR. ALLEN:  Exactly, and the Department of Revenue

16  came back and said no, it isn't.

17        THE COURT:  Mr. Salpietro, does the law require the

18  Walmarts of the world or Harry's corner store to do everything

19  within their power to reduce the amount of sales tax that's

20  collected?

21        Could they lawfully decide, you know what, we took

22  our shot, the Department of Revenue says unless you change

23  your receipts, you got to collect the tax and we're not

24  changing our receipts, is that against the law?

25        MR. SALPIETRO:  Is it against the law?  I don't

1    know but probably not, quite honestly, but in light of the

2    fact that Walmart is saying we can do this, they say in their

3    letter in March we have the capability of taking tax off, we

4    want to take the tax off, what should we do --

5              THE COURT:  Their March of '05 letter?

6              MR. SALPIETRO:  Yes.  Particularly in light of the

7    fact the new technology that comes along, you would think they

8    not only want to do it but should do it for the customers.

9              Is there a legal obligation?  Not knowing the

10   answer, my gut tells me no.

11             THE COURT:  You need to research that.

12             MR. SALPIETRO:  I need to research that.

13             THE COURT:  Okay.  Mr. Salpietro, why don't we do

14   this.  How much time would you and Ms. Miller like to respond

15   to the stay motion with whatever you want to respond with?

16             MR. SALPIETRO:  One of the questions we were going

17   to ask you under your order for motion practice, we didn't

18   know if it was a seven or 14-day.

19             THE COURT:  That's one of the reasons we are here.

20   We try not to play gotcha justice.  I don't think any of my

21   colleagues do either.  Within reason, how many days do you

22   want?

23             MR. SALPIETRO:  14 days should be sufficient.

24             THE COURT:  Okay.  We'll make that 14 days from

25   tomorrow, so any response you want to submit will be due by

1    August 20th.

2            Mr. Allen, how much time do you want for a reply,

3    if you elect to reply?  You don't have to.  Rather than having

4    asked --

5            MR. ALLEN:  We can do a reply in seven days.

6            THE COURT:  Because there is a possibility

7    Mr. Salpietro's response may have buried in it some other form

8    of motion, we'll give you 14 days after the 20th.  We'll make

9    that a date certain -- we'll make your reply due September 4th,

10   which is a Wednesday.

11           Then, depending on what they say, I may have

12   argument on that.

13           Is anybody going to be prejudiced if we stay all

14   26(f) and discovery and other pretrial activity until we get

15   these briefs in and decided?

16           Mr. Salpietro, does that prejudice your client?

17           MR. SALPIETRO:  Not in the way that the Court has

18   stated it.

19           My concern, and it's something I'll address in the

20   brief, if the Court decides to stay the case, one of the

21   issues that needs to be addressed in terms of what we submit

22   would be to address -- tailor the relief.  What do we get to

23   do once the stay is imposed.  If we get to Revenue, we want

24   this relief on behalf of everybody.

25           THE COURT:  And they say we do onesies.

1           MR. SALPIETRO:  Or who is everybody.  In which

2   case, we have to take discovery from Walmart and find out who

3   everybody is.  Those are issues but in the simplest form and

4   at its first level, the answer to your question is no, we're

5   not prejudiced by not doing anything until the Court has a

6   chance to consider it.

7           THE COURT:  Mr. Allen, if you haven't done it

8   already, would I be correct in believing that you or one of

9   your team has sent or will be sending some form of appropriate

10  communication to your client saying until this is all sorted

11  out, don't let anything happen to our sales tax records in

12  Pennsylvania?

13          MR. ALLEN:  Yes.  I know internally Walmart has

14  very strict procedures about that.

15          THE COURT:  They are in place.  If we need to put

16  Humpty Dumpty back together in terms of taxes collected or

17  paid, there is not going to be some perfectly innocent,

18  well-meaning hitting of the delete button the third week of

19  September that we would all regret.

20          MR. ALLEN:  I will double-check.

21          THE COURT:  That's the only possible prejudice I

22  could see would be some diminution of the records and my guess

23  is the Commonwealth has sales tax records going back eons.

24          We'll enter a text order today that will give you

25  that time, Mr. Salpietro and Mr. Allen, puts a hold on

1   anyone's obligation to do a 26(f) report or ADR stipulation,

2   anything like that.  We'll stay all discovery for the time

3   being.

4          What I would ask if I don't stay the case, I may

5   put this online for a fairly fast track initial mediation so

6   if counsel could at least be talking with one another about a

7   nominee if we go there.

8          Mr. Salpietro?

9          MR. SALPIETRO:  We have already filed per your

10  order stipulation.

11         THE COURT:  That's right.  Who did you folks

12  select?

13         MR. SALPIETRO:  Jim Brown.

14         THE COURT:  Okay.  You have someone ready to go.

15  If you want to, you can mediate with Mr. Brown.  I'm not going

16  to obligate it.  We have him on stay.  Mr. Salpietro, thank

17  you for reminding me of what I should have remembered.  I

18  appreciate that.

19         Let's keep that on hold.  If you want to do it, I'm

20  not going to get in your way.  Let's see where we stand on the

21  stay session.

22         Does that work for you, Mr. Salpietro and

23  Ms. Miller?

24         MR. SALPIETRO:  Yes.

25         MS. MILLER:  Yes.

1          MR. ALLEN:  Can I clarify that also applies to our

2     responsive pleading?

3          THE COURT:  Do you anticipate if I didn't apply it

4     to your responsive pleading, you would be filing an answer or

5     some form of Rule 12(b) motion?

6          MR. ALLEN:  I believe we would, yes.

7          THE COURT:  Okay.  Do you have any sense without

8     looking at you, in general, what the grounds to that would be?

9          MR. ALLEN:  Well, there are a number of grounds we

10    are in the process of sorting out but, frankly, the central

11    issue is an issue you already touched on, which is the fact

12    the money went to the Commonwealth, so there are a number of

13    potential arguments, including exhaustion of administrative

14    remedy, issues as to whether the Commonwealth is an

15    indispensable party, and we have different arguments we would

16    make as to whether some of the claims were properly pled.

17         For example, there's a claim for constructive

18    trust, the theory being Walmart is a constructive trustee for

19    its customers.

20         The tax statute provides clearly when we collect

21    the money, we hold it in trust for the Commonwealth, not for

22    the customer.

23         There are a number of arguments we would be making.

24         THE COURT:  What would you prefer to do?

25         MR. ALLEN:  I would prefer to be able to postpone

1   our obligation to respond.

2          THE COURT:  I'll do that.  I try to handle

3   preferences from either counsel.

4          Mr. Salpietro has given us an early warning among

5   the things he may attach to his response is a recent Revenue

6   ruling which seems to indicate the only avenue is not just

7   from the Department of Revenue, that may be from your side,

8   also.

9          Let's give Mr. Salpietro the opportunity to do

10  that.  Let's see where we are when I get all the briefing in

11  on the stay.

12         We may have another conference or

13  conference/argument and then we can take up at that time, one,

14  what Mr. Salpietro says in his papers may influence your

15  thinking in regards to what you would be filing.  So, rather

16  than having you off to the races doing something that

17  Mr. Salpietro's papers may convince you to modify or go in a

18  different direction or not go at all, we'll put on hold your

19  obligation to respond under Rule 12 pending further Order of

20  Court.

21         Does that work for you, Mr. Salpietro?

22         MR. SALPIETRO:  Yes.

23         THE COURT:  We'll do that and mid September, my

24  guess is we'll be all back together.

25         Mr. Salpietro, anything else we ought to take care

1  up today?

2            MR. SALPIETRO:  No.

3            THE COURT:  Ms. Miller?

4            MS. MILLER:  No.

5            THE COURT:  Mr. Allen and team?

6            MR. ALLEN:  No.

7            THE COURT:  Ms. Wojdowski, anything we have not

8  taken up with these folks that we have not talked about?

9            THE LAW CLERK:  No.

10           THE COURT:  That will conclude the conference.

11 We'll get a text order out and relieve people of all sorts of

12 obligations and states the date.  We'll wait to see your

13 papers on the stay.

14           (Whereupon, the above hearing concluded at

15 2:25 p.m.)

16                         - - -

17           I hereby certify by my original signature herein,

18 that the foregoing is a correct transcript, to the best of my

19 ability, from the record of proceedings in the above-entitled

20 matter.

21

22           S/ Karen M. Earley

23               Karen M. Earley

24               Certified Realtime Reporter

25