## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN FARNETH, on behalf of himself and all others similarly situated, | ) ) ) ) | 2:13-cv-01062 |
| Plaintiff, | ) ) | Judge Mark R. Hornak |
| v. | ) ) | |
| WAL-MART STORES, INC., t/d/b/a Wal-Mart, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Brian Farneth ("Mr. Farneth") brings this action to recover Pennsylvania state sales tax ("Sales Tax") that he paid to Defendant Wal-Mart Stores, Inc. ("Wal-Mart"). Mr. Farneth alleges that when he used a "buy one, get one" ("BOGO") coupon to get a discount on two (2) cans of Gillette Fusion shaving gel, Wal-Mart improperly charged him excess Sales Tax of twenty-one cents[1] on the original $2.97 per item purchase price of both items without first deducting the amount of the BOGO discount. On behalf of himself and a putative class of persons throughout Pennsylvania whom he alleges are owed refunds of similarly, allegedly improperly charged Sales Tax amounts by Wal-Mart, Mr. Farneth asserts claims for conversion and misappropriation (Count I), breach of constructive trust (Count II), unjust enrichment (Count III), and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law

---

[1] While this amount is small standing alone, the issues in this case are quite significant to the parties. While Wal-Mart denies all liability, or the appropriateness of class action treatment, it does contend in support of removal that the liability claimed in the Complaint exceeds $5,000,000, exclusive of costs and interest. ECF No. 1 at ¶ 23. Presumably, there are likely few manufacturer's BOGO coupons on big ticket items available in the marketplace, or specifically Wal-Mart, such as LED televisions, patio furniture, or digital tablets, so this sum would presumably be accumulated in small increments. If, for instance, the Sales Tax overcharge was on average the $.21 involved here, this could (depending on the type of monetary relief awarded) work out to 23,809,523 overtaxed transactions in Pennsylvania within the limitations period.

("UTPCPL") (Count IV), 73 Pa. Cons. Stat. §§ 201-1, *et seq.*[2] Mr. Farneth requests declaratory and injunctive relief, as well as monetary damages.

Pending before the Court are two motions – Wal-Mart's Motion to Stay the case pursuant to Pennsylvania law's primary jurisdiction doctrine, ECF No. 11, and Mr. Farneth's Motion to Remand the case to state court, ECF No. 16. After careful consideration of the parties' moving, opposition, and reply papers, and after oral argument on the Motions, for the reasons that follow, the Court denies Wal-Mart's Motion to Stay and grants Mr. Farneth's Motion to Remand, based on principles of comity.

I.    **BACKGROUND AND FACTS**

On June 8, 2013, Mr. Farneth purchased two (2) cans of shaving gel at a Wal-Mart store in the Aspinwall neighborhood of Pittsburgh, Pennsylvania. Complaint ("CP"), at ¶ 4. Each can of shaving gel cost $2.97. *Id.* at ¶ 8. At the time of purchase, Mr. Farneth presented the Wal-Mart cashier with a BOGO coupon. *Id.* at ¶ 4. The Wal-Mart cashier accepted the coupon and charged Mr. Farneth a total of $2.97 for the two cans of shaving gel. *Id.* at ¶¶ 4, 6, 8. However, according to his receipt, Wal-Mart charged Mr. Farneth Sales Tax of $0.42 on the sale, computed by multiplying the applicable 7 percent Sales Tax by the original sale price of the two cans of shaving gel of $5.94. *Id.* at ¶¶ 7-8.

The applicable Pennsylvania Department of Revenue Regulation ("Regulation") provides:

> Amounts representing on-the-spot cash discounts, employee discounts, volume discounts, store discounts such as "buy one, get one free," wholesaler's or trade discounts, rebates and store or manufacturer's coupons shall establish a new

---

[2] Plaintiff contends that Wal-Mart enriches itself by pocketing the excess "collection commission" it is entitled to receive under the Pennsylvania Tax Code. Apparently, a merchant collecting sales tax may retain as a commission one percent (1%) of the taxes collected, *see* 72 Pa. Cons. Stat. § 7227, or to the Plaintiff's point, 1% of what Plaintiff alleges are excess Sales Tax collections. Hence, the asserted economic motive for the alleged Sales Tax overcharges. ECF No. 1-1 at ¶ 15.

purchase price if both the item and the coupon are described on the invoice or cash register tape.

61 Pa. Code § 33.2(b)(2) (2013). Mr. Farneth contends that because his receipt described the items he purchased along with the coupon that applied to his purchase, that Pennsylvania tax Regulation required Wal-Mart to deduct the amount of the coupon from the taxable portion of the purchase price before assessing Sales Tax. CP ¶¶ 12-13. Therefore, according to Mr. Farneth, Wal-Mart should have charged him Sales Tax on $2.97 instead of $5.94. *Id.* at ¶¶ 8-13. As the basis for his putative class action suit, he further alleges that as a common practice, Wal-Mart overcharges Sales Tax in this same fashion to customers who present similar BOGO discount coupons. *Id.* at ¶¶ 13-14.

Wal-Mart, on the other hand, contends that a 2005 staff opinion letter from the Pennsylvania Department of Revenue's Office of Chief Counsel in essence blessed the process Wal-Mart used to charge Sales Tax on the involved shaving gel by advising Wal-Mart that it may not, when using its then-current point-of-sale technology, deduct the value of a manufacturer's coupon before calculating sales tax. ECF No. 11 at ¶¶ 5-6. The parties dispute the current validity and applicability of that staff opinion letter.

Mr. Farneth originally brought this putative class action in the Allegheny County Court of Common Pleas. ECF No. 1 at 1. Wal-Mart timely removed the case to this Court on the basis of diversity pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), and as authorized by 28 U.S.C. § 1453. Wal-Mart then filed a Motion to Stay the case pursuant to Pennsylvania's primary jurisdiction doctrine, ECF No. 11, and a Brief in Support of its Motion. ECF No. 12. Mr. Farneth filed a Response in Opposition with an Alternative Motion to Remand the case to state court, ECF No. 16, along with a Brief in Opposition to Wal-Mart's Motion to Stay and in Support of its Alternative Motion to Remand.

ECF No. 17. Wal-Mart next filed a Reply Brief as to its Motion to Stay, ECF No. 19, and a

Response in Opposition to Mr. Farneth's Motion to Remand, ECF No. 20. Mr. Farneth filed a

Sur-Reply Brief as to Wal-Mart's Motion to Stay. ECF No. 24. Finally, at the Court's request,

after oral argument on the Motions, both parties filed Supplemental Briefs further explaining

their positions on their respective motions.[3] ECF Nos. 26 and 27.

## II.   DISCUSSION

Statutes conferring federal jurisdiction, such as CAFA, "should be read with sensitivity to

'federal-state relations' and 'wise judicial administration.'" *Levin v. Commerce Energy, Inc.*,

560 U.S. 413, 423 (2010) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).

The Tax Injunction Act ("TIA") and its attendant principles of comity counsel such sensitivity by

this Court in deciding whether exercising federal jurisdiction over the case is appropriate.

Pursuant to the TIA, "[t]he district courts shall not enjoin, suspend or restrain the assessment,

levy or collection of any tax under State law where a plain, speedy and efficient remedy may be

had in the courts of such State." 28 U.S.C. § 1341.[4]

Additionally, the "more embracive" doctrine of comity applicable to state taxation cases

"restrains federal courts from entertaining claims for relief that risk disrupting state tax

---

[3] The Court invited the parties to address in supplemental briefing whether this Court's jurisdiction over the case was limited by the Tax Injunction Act, various flavors of the abstention doctrine, or any other prudential limitations on this Court's exercise of federal jurisdiction. The parties primarily devoted their papers to a reiteration of their prior arguments, albeit with enhanced vigor.

[4] The Plaintiff specifically seeks injunctive relief at Count V of his Complaint, which is entitled "Injunction," asking this Court to enjoin any further collection of Sales Tax by Wal-Mart done without the consideration of Department of Revenue Regulation 33.2 as Plaintiff construes it, and from remitting certain already-collected Pennsylvania Sales Tax monies to the Department of Revenue. It also asks this Court to order Wal-Mart to file amended Sales and Use Tax returns with the Department of Revenue, and to seek from that Department a refund of previously remitted Sales Tax to be used to make refunds to the putative class. From where the Court sits, this relief would place this Court at the heart of the Sales Tax assessment and collection process, and specifically asks this Court to enjoin the collection of Sales Tax. *See Hibbs v. Winn*, 542 U.S. 88, 104-06, 108 (2004). Thus, notwithstanding the absence of the Commonwealth as a party, at least part of the case seeks to enjoin or otherwise hinder the "assessment, levy or collection of a state tax." *BellSouth Telecomms., Inc. v. Farris*, 542 F.3d 499, 501 (6th Cir. 2008). These claims for equitable relief are in the Court's estimation inherently intertwined with those for damages, and are not simply requests for relief ancillary to a recovery of money. *Sipe v. Amerada Hess Corp.*, 689 F.2d 396, 404 (3d Cir. 1982).

administration." *Levin*, 560 U.S. at 417 (2010) (citing *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 102 (1981)). In *Great Lakes Dredge & Dock Co. v. Huffman*, the Supreme Court illustrated the rationale behind the comity doctrine:

> Interference with state internal economy and administration is inseparable from assaults in the federal courts on the validity of state taxation, and necessarily attends injunctions, interlocutory or final, restraining collection of state taxes. These are the considerations of moment which have persuaded federal courts of equity to deny relief to the taxpayer – especially where the state, acting within its constitutional authority, has set up its own adequate procedure for securing to the taxpayer the recovery of an illegally exacted tax.

319 U.S. 293, 298 (1943).[5]

In *Levin*, the Supreme Court held that principles of comity demanded deference to the state court system where plaintiffs brought Commerce Clause and Equal Protection claims against the state of Ohio, alleging that certain tax exemptions enjoyed by local natural gas distribution companies under the Ohio Revenue Code were discriminatory. 560 U.S. at 418-19, 432. The Court pointed to a "confluence of factors" that led to its conclusion. First, plaintiffs sought federal court review of "commercial matters over which Ohio enjoys wide regulatory latitude." *Id.* at 431. That is certainly the case here. Second, their suit did not involve a fundamental federal right or classification warranting heightened judicial scrutiny. *Id.* This allowed the Court to maintain its "proper reluctance to interfere by prevention with the fiscal operations of the state governments...in all cases where the [f]ederal rights of the persons could otherwise be preserved unimpaired." *Id.* at 422 (quoting *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 282 (1909)). That is also the case here. Third, the Court decided that Ohio state courts were "better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative preferences and because the TIA

---

[5] Since its decision in *Great Lakes*, the Supreme Court has extended the comity doctrine's reach to actions for damages on the same reasoning. *See McNary*, 454 U.S. at 107-117.

does not constrain their remedial options." *Id.* at 431-32. In this Court's judgment, that, too, is the case here.

A similar confluence of factors leads the Court to conclude that on the basis of comity considerations, this case should be remanded to state court. Mr. Farneth is asking the Court to consider and then apply part of the Pennsylvania Department of Revenue's regulatory Sales Tax scheme – a mechanism by which the state of Pennsylvania collects Sales Tax revenue – over which the state enjoys wide regulatory latitude. Wal-Mart is correct in arguing that Mr. Farneth is not questioning the validity of the state Regulation itself, but is instead alleging that it (Wal-Mart) violated the Regulation by improperly charging, collecting, and remitting Sales Tax on the full purchase price before deducting the applicable BOGO discount.[6] However, for the Court to determine whether Wal-Mart did, or did not, violate 61 Pa. Code § 33.2(b)(2) in regard to collecting Sales Tax on the involved gel, it would have to discern and then apply the proper method of Sales Tax collection authorized by that Regulation. Mr. Farneth anticipated this problem when he included citations to Pennsylvania Department of Revenue guidance on that

---

[6] In this regard, this case is not *In re Wal-Mart Stores, Inc.*, 2009 WL 7823752 (7th Cir. Nov. 12, 2009). Here, the issue relates to the precise amount of Sales Tax due under the Regulations on the purchase of two (2) cans of shaving gel using a BOGO coupon. In that case, no sales tax was ultimately due at all, since the purchased goods were returned *in toto*, albeit to a different store in a different locale with a different sales tax rate. 2009 WL 7823752 at *1. Given that Mr. Farneth apparently kept the shaving gel, the question here is "how much tax was due?" In *In re Wal-Mart*, the only issue was the scope of Wal-Mart's refund duty in a situation in which no sales tax was due at all. *Id.* The Seventh Circuit did not address the comity doctrine, and held that the TIA was not implicated when the dispute was over whether Wal-Mart had to make its full refund calculation based on the rate of tax where the sale was made, or the rate of tax in force where the goods were returned. *Id.* at *1-2.

Regulation in his Complaint.[7]  Wal-Mart also foresaw this concern.  In its Brief in support of its

Motion to Stay, it cited to a letter from the Pennsylvania Department of Revenue advising Wal-

Mart on the proper method of collecting Sales Tax when presented with BOGO coupons.[8]

The one thing the parties seem to agree on is that when ruling on the proper method of

Sales Tax collection under the applicable Regulation in these shaving gel-driven, BOGO-centric

circumstances, the Court would undoubtedly have to construe the language of the Regulation,

interpret Pennsylvania Department of Revenue guidance, determine what weight to give to a

2005 Department of Revenue Sales Tax staff opinion letter, and ultimately apply its analysis as a

federal court to a state tax collection regulation and regime.  Essentially, "[t]o rule on the merits

of this case, the court would have to make, albeit indirectly, a ruling as to the legitimacy of the

revenue collection practices of a state entity."  *Trading Co. of N. Am., Inc. v. Bristol Tp. Auth.*,

47 F. Supp. 2d 563, 569 (E.D. Pa. 1999).  Such interference with state tax administration was

recognized by the Supreme Court in *Great Lakes* to be "inseparable from assaults in federal

court on the validity of state taxation."  319 U.S. at 298.

---

[7] As support for its argument that Wal-Mart improperly computed the sales tax on his purchase, Mr. Farneth's Complaint quotes an article from the Pennsylvania Department of Revenue's February/March 2005 Tax Update, which reads in relevant part:

> The Regulations require a retailer to deduct the coupon amount from the taxable portion of the purchase price, if the cash register receipt describes both the item purchased and the coupon that applies to it.  The description requirement ensures that a coupon relating to a nontaxable item will not reduce the taxable purchase price.  It also protects the retailer by showing why the taxable price was reduced.

> The Department interprets the requirement of a description to mean that the cash register receipt makes a clear reference to the item and the coupon related to it or a clear reference that there is an amount deducted on any purchase or a percentage discount on all items listed whether taxable or not.

CP, at ¶ 11; *see also* ECF No. 12-1.

[8] Wal-Mart provided and relies upon an August 11, 2005 Letter from Jeffrey S. Snavely, Deputy Chief Counsel, Pennsylvania Department of Revenue, to John T. Dalton, Senior Tax Manager-Compliance, Wal-Mart.  ECF Nos. 12, at 5-6, and 12-3.  Plaintiff and Wal-Mart are precisely at odds as to what they assert the Regulation obligated Wal-Mart to do as to this purchase.

The case at hand involves no federally-protected fundamental right or classification for the benefit of either party that invites heightened judicial scrutiny, but is instead a quarrel focusing on how Sales Tax is to be collected and remitted under state law in BOGO coupon situations. Mr. Farneth brought suit for state-law claims of conversion and misappropriation, breach of constructive trust, unjust enrichment, and unfair trade practices under the UTPCPL. None of these causes of action contemplates the assertion of a federal right, or a defense based on federal law, and certainly none that could not be addressed in state court, *Levin*, 560 U.S. at 429. Pennsylvania courts are simply better positioned than this Court to ascertain and then correct any violation of state tax collection laws[9] – they are presumably more familiar with the administration of Pennsylvania tax Regulations and are wholly unburdened by the TIA's limitations in fashioning proper and complete remedies. *Id.* at 428. Taken together, these considerations counsel deference to the state adjudicative processes. *Id.* at 432.[10]

The Court's conclusion is reinforced by the Third Circuit's decision in *Sipe v. Amerada Hess Corp.*, 689 F.2d 396 (3d Cir. 1982). There, seamen challenged their employer's practice of withholding of a portion of their wages under New Jersey's unemployment compensation and temporary disability benefits tax laws. *Sipe*, 689 F.2d at 398. The plaintiffs asserted that this practice violated federal law, and, as is the case here, sought injunctive relief, a refund of the money withheld, and other monetary damages. *Id.* The court held that, applying either the Tax

---

[9] 72 Pa. Cons. Stat. § 7202(a) authorizes vendors to collect Sales Tax from the purchaser and then remit the tax to the Commonwealth. In the interim between collection and remittance, pursuant to 72 Pa. Cons. Stat. § 7225, the vendor holds the collected tax in trust for the Commonwealth, and such Sales Tax is the property of the Commonwealth of Pennsylvania. Therefore, to grant the Plaintiff at least some of the relief he requests against Wal-Mart, the Court would effectively have to issue an injunction against collection of Sales Tax by an agent and trustee of the Commonwealth, and against remittance of that Sales Tax to the Commonwealth, actions that the doctrine of comity counsels against, and ones whose propriety should be decided by the courts of Pennsylvania.

[10] Wal-Mart contends that Plaintiff's sole remedy is to file an administrative claim with the Pennsylvania Department of Revenue for a refund of the excess Sales Tax he allegedly paid. ECF No. 12 at 9-11. Wal-Mart's papers are silent as to (a) whether an administrative adjudication as to such a refund would serve to bar administrative re-litigation of such a claim for perhaps 20,000,000 other purchases or (b) what happens in this Court after such an administrative determination has occurred.

Injunction Act or related principles of comity, the district court lacked jurisdiction to hear the case. *Id.* at 404, 408. As in *Sipe*, this Court cannot retain jurisdiction over a case that would require it to determine the proper interpretation of the applicable state tax Regulation before ruling on the merits, and it is, of course, axiomatic that challenges to the methods and procedures of state tax collection may do "no less damage" to a state tax system than would a head-on attack on the legitimacy of an assessment. *Trading Co.*, 47 F. Supp. 2d at 571.

Wal-Mart argues that *Sipe* does not compel the Court to decline jurisdiction over this case under the comity doctrine because there, the state of New Jersey was a named defendant and was enjoined from future withholding along with plaintiffs' employer, *id.* at 404, whereas here, the Commonwealth of Pennsylvania is not a party, and Mr. Farneth is not seeking any relief directly from the state. However, even if *Sipe* may not compel remand, that does not diminish its relevance to this Court's analysis. Further, that Pennsylvania has not been joined to this action does not mean that it will not later be joined as an interested party, or even an indispensable one. The original complaint in *Sipe* did not name New Jersey as a defendant; the state was named later in an amended complaint and was joined as a third party defendant in two other consolidated actions. *Id.*

At oral argument, the Plaintiff conceded that because the central issue in this case is the proper interpretation of a Pennsylvania Department of Revenue Regulation, the Commonwealth may well be an indispensable party to this action. The foundation of its Motion to Remand is that either under 28 U.S.C. § 1332(d)(5)(A)[11] or Fed. R. Civ. P. 19(b)[12], the case should be

---

[11] 28 U.S.C. § 1332(d)(5) provides, in relevant part: "Paragraphs (2) through (4) [of § 1332] (granting CAFA jurisdiction to federal courts) shall not apply to any class action in which – (A) the primary defendants are States, State Officials, or other governmental entities against whom the District Court may be foreclosed from ordering relief."

remanded to state court if the Court determines that the Commonwealth must be joined as a party. Wal-Mart similarly indicates that the Commonwealth is at least a highly interested party to this action by arguing in its brief that the Pennsylvania Legislature committed resolution of this issue to the Department of Revenue, and that the case should be stayed pending the Department's administrative decision as to the proper interpretation of the relevant revenue Regulation, applying the state law version of the "primary jurisdiction" doctrine. The Court agrees that Pennsylvania has an undeniable interest in the interpretation and application of its own Sales Tax Regulation (whether it is joined as a party or not), and this is yet another reason that considerations of comity prudentially divest the Court of jurisdiction to hear the case.

Before a federal court may remand a case to state court based on comity principles, state law must provide a plain, adequate, and complete remedy. *McNary*, 454 U.S. at 116. This language is not significantly different in meaning from the Tax Injunction Act's requirement of a "plain, speedy, and efficient" state remedy. *Id.* at 116 n. 8 (citing *Great Lakes*, 319 U.S. at 297-99, *Tully v. Griffin, Inc.*, 429 U.S. 68, 73-74 (1976), *Hillsborough v. Cromwell*, 326 U.S. 620, 622-23 (1946), *Matthews v. Rodgers*, 284 U.S. 521, 525-26 (1932)). "Both phrases refer to the obvious precept that plaintiffs seeking protection of federal rights in federal courts should be remitted to their state remedies if their federal rights will not thereby be lost."[13] *Id.*

Mr. Farneth is not seeking relief implicating any federal right that would be lost if the case were remanded to state court. Additionally, both parties have pointed to state remedies that they believe would be adequate and complete, and each relies on competing interpretations of

---

[12] Fed. R. Civ. P. 19(b) governs situations where an indispensable party to the action cannot feasibly be joined. The options for the court in such a situation are to proceed with the action among the existing parties or to dismiss the case. Fed. R. Civ. P. 19(b).

[13] In this case, neither party is relying on a substantive federal right as either a sword or a shield.

Sales Tax regulations. Wal-Mart argues vigorously for the preeminence of a state law resolution of these issues, and Wal-Mart's argument for deference to a state administrative process under the primary jurisdiction doctrine is a strong indication that federal court deference under comity principles is appropriate. Mr. Farneth initially filed this action in state court, where he undoubtedly believed that he could obtain a sufficient remedy on his asserted causes of action. He has also filed a motion to remand the case to state court in the event that this Court determines that the Pennsylvania Department of Revenue is an indispensable party and cannot be joined in federal court. Thus, Mr. Farneth plainly believes that Pennsylvania's adjudicative processes would afford him a full and adequate remedy.

The entire basis of Wal-Mart's Motion to Stay is the argument that with its statutory Sales Tax scheme, Pennsylvania has committed issues related to the proper manner of collecting Sales Tax primarily to the Pennsylvania Department of Revenue, and therefore, under Pennsylvania's primary jurisdiction doctrine, the Department of Revenue should administratively determine whether Wal-Mart properly collected Sales Tax on Mr. Farneth's purchase.[14] If the Court remanded this case, that option would not be foreclosed to the state court[15], and that court would be well-equipped to determine whether under Pennsylvania law, the primary jurisdiction doctrine mandated a stay of its state judicial proceedings. *See Stoloff v. Neiman-Marcus Group, Inc.*, 24 A.3d 366 (Pa. Super. 2011). By the central tenet of its Motion, Wal-Mart necessarily

---

[14] This argument itself supports the conclusion that any action by this Court creates a risk of a federal disruption of state tax administration. *Levin*, 560 U.S. at 417.

[15] In this regard, the Court parts company with the court in *Johnson v. Famous Dave's of America Inc.*, 2012 WL 1646875 (E.D. Pa. May 10, 2012), which retained federal jurisdiction while staying its hand as the state tax issues were considered in the first instance by the Department of Revenue. From this Court's perspective, in this situation the doctrine of "primary jurisdiction" is a statement of allocation of decisional authority within the state system, and is therefore far better applied (if at all) within that system. This is especially the case here, in which the Complaint facially seeks the very form of equitable relief barred by the TIA.

demonstrates that it believes that Pennsylvania law and proceedings supply an adequate (and most appropriate) remedy available for the adjudication of the relevant claims and defenses.

Since Pennsylvania, acting within its constitutional authority, has set up its own adequate procedures for securing to taxpayers the recovery of illegally exacted taxes, this is precisely the kind of state tax case the Supreme Court in *Great Lakes* contemplated should be remanded on comity grounds.[16] And because plain, adequate, and complete state remedies (judicial or administrative) that would not interfere with any asserted federal right do exist at the state level, the Court concludes that the comity doctrine strongly counsels remand of the Plaintiff's suit.[17]

## III.   CONCLUSION

For the reasons stated, Wal-Mart's Motion to Stay is denied without prejudice, and the Plaintiff's Motion to Remand is granted on comity grounds. An appropriate order will follow.

Mark R. Hornak
United States District Judge

Dated: December 30, 2013
cc: All counsel of record

---

[16] Whether the comity doctrine applies when a case has been removed to federal court under CAFA was recently addressed by the Eastern District of Missouri in *City of Maryland Heights v. Tracfone Wireless, Inc.*, 2013 WL 791866 (E.D. Mo. Mar. 4, 2013), where the court remanded a putative class action removed to federal court under CAFA on comity grounds, pursuant to the authority of the Supreme Court's opinion in *Levin*. Given this disposition, the Court need not resolve whether the Commonwealth is an "indispensable party" to be joined under Fed. R. Civ. P. 19(b), or whether remand is compelled by virtue of 28 U.S.C. § 1332(d)(5)(A).

[17] Given the Court's disposition on comity grounds, the Court is not required to conclusively determine whether the TIA would, standing alone, be a jurisdictional bar, *Levin*, 560 U.S. at 432 (citing *Great Lakes*, 319 U.S. at 299, 301), although, as noted at note 9, *supra*, Plaintiff has sought injunctive relief aimed directly at stopping the collection and remittance of Sales Tax by the Defendant acting as the state's agent/trustee, a central concern of the TIA.